UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SANDRA H.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

24-CV-291 (JLS)

## DECISION AND ORDER

Plaintiff Sandra H. brought this action under 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 15, 16. For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

_____

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Disability Insurance Benefits ("DIB"), filed on July 6, 2021.[2] Tr. 17.[3] Plaintiff's application was initially denied, and she requested a hearing before an administrative law judge ("ALJ"). *Id.* at 128–39, 153–73. Following the hearing, at which Plaintiff was represented by counsel, ALJ Tracy LaChance issued a decision finding that Plaintiff was not disabled. *Id.* at 17–33. Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action. *Id.* at 1–3; Dkt. 1.

## LEGAL STANDARDS

### I.    DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 589 U.S. 97, 99 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

---

[2] Plaintiff applied for DIB. To receive DIB, a claimant must show that she became disabled while meeting the Act's insured status requirements. *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022).

[3] The filings at Dkts. 3–5 are the transcript of the proceedings before the Social Security Administration. All references to Dkts. 3–5 are hereby denoted "Tr. __."

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520. First, an ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 404.1572. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits

3

the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 404.1520(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 404.1545.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. *Id.* § 404.1560(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in

4

the national economy exists that the claimant can perform given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.    THE ALJ'S DECISION

To begin, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from February 23, 2018, her alleged onset date, through December 31, 2020, her date last insured. Tr. 19. The ALJ also found that Plaintiff suffered from the following severe impairments: "cervical degenerative disc disease and lumbar spinal stenosis." *Id.* The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] could stand and walk up to 6 hours per day and sit up to 6 hours per day; she could occasionally climb ladders, ropes, or scaffolds; she could frequently climb ramps and stairs; and she could frequently balance, stoop, kneel, crouch, and crawl.

*Id.*

The ALJ then found that Plaintiff was capable of performing past relevant work. *Id.* at 32–33. As such, according to the ALJ, Plaintiff had not been under a disability from her alleged onset date through her date last insured. *Id.* at 33.

## II.    PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ erred in two ways. *See* Dkt. 9-1 at 8–13. First, Plaintiff argues that the ALJ failed to account for Plaintiff's non-severe mental impairments at step four—namely, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"). *Id.* at 8–11. Second, Plaintiff argues that the ALJ improperly evaluated the opinion of Timothy Heyden, M.D. *Id.* at 11–13. For the reasons that follow, the Court disagrees.

## III.    ANALYSIS

### A. Dr. Heyden's Opinion

Under 20 C.F.R. § 416.920c, an ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c(a)-(c). Those factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* § 416.920c(c)(1)-(5). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion or prior administrative medical finding but need not expound upon the remaining three. *See id.* § 404.920c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s)

6

or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

On January 4, 2023, Dr. Heyden completed a physical RFC questionnaire on Plaintiff's behalf. *See* Tr. 1337–41. Dr. Heyden opined that Plaintiff could sit for up to forty-five minutes and stand for up to ten minutes at a time, could never lift more than ten pounds, and could only rarely lift ten pounds or less. *Id.* at 1339. Dr. Heyden also found that Plaintiff could never look down, twist, stoop, crouch, squat, or climb ladders and could, only occasionally, turn her head, look up, hold her head in a static position, and climb stairs. *Id.* at 1340. Dr. Heyden concluded that Plaintiff would frequently be off task and could perform only low stress work. *Id.* at 1338.

The ALJ found Dr. Heyden's opinion "unpersuasive." Tr. 30. In doing so, the ALJ first addressed how well Dr. Heyden supported his opinion. The ALJ found that the opinion was not "supported by the relevant evidence of record or . . . Dr. Hayden's [sic] explanation for his opinion." *Id.* The ALJ also noted that, "[w]hile Dr. Hayden [sic] supported his opinion by citing to objective examination findings of paraspinal tenderness . . . this was not documented in Dr. Hayden's [sic] own treatment notes during the relevant period" and that Dr. Heyden "provided no objective support for the manipulative limitations he assessed." *Id.*

The ALJ then addressed whether Dr. Heyden's opinion was consistent with other evidence in the record. For example, the ALJ found that Dr. Heyden's opinion

was "not consistent with . . . the relevant evidence of record or [Plaintiff's] course of treatment." *Id.* The ALJ noted that Plaintiff "was only treating her symptoms with as needed muscle relaxers and occasional physical therapy, and she did not require treatment with injections or surgery," which was "not supportive of the highly restrictive limitations [Dr. Heyden] assessed." *Id.* The ALJ also noted that Plaintiff "denied symptoms of anxiety or depression during the relevant period." *Id.*

Of course, a conclusory statement that an opinion is not supported by or consistent with the record is inadequate to support an ALJ's determination. *See Drake v. Saul*, 839 F. App'x 584, 586 (2d Cir. 2020). But when the ALJ's reasoning can otherwise be gleaned from the record, additional discussion is not required. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." (citation modified)); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). That was the case here.

ALJ LaChance considered various medical opinions and prior administrative medical findings, each inconsistent with Dr. Heyden's opinion. For example, the ALJ considered the opinions of Shakra Junejo, M.D., and D. Miller, D.O., both state agency medical consultants. *See* Tr. 29–30. Dr. Junejo opined that Plaintiff could

8

sit, stand, and walk for up to six hours in an eight-hour workday, frequently lift up to ten pounds, and occasionally lift up to twenty pounds. *Id.* at 81. Dr. Junejo also found that Plaintiff could frequently climb ramp and stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, and scaffolds. *Id.* And Dr. Junejo concluded that Plaintiff had no manipulative or environmental limitations. *Id.* at 81–82. Dr. Miller later reviewed the record and made similar findings. *See id.* at 108–11. Certainly, the limitations that Drs. Junejo and Miller found differed dramatically from those in Dr. Heyden's opinion. *Compare id.* at 81–82, 108–11, *with id.* at 1337–41.

The ALJ, therefore, did what the regulations required of her when she found Dr. Heyden's opinion to be inconsistent with, and unsupported by, the record. *See Id.* at 30. Because the ALJ considered appropriately Dr. Heyden's opinion in light of Dr. Heyden's own records and other evidence in the record, the ALJ did not err. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

### B. Plaintiff's Non-severe Mental Impairments

At step two, the regulations require an ALJ to apply the "special technique" to decide whether a claimant's medically determinable mental impairments are severe. *See* 20 C.F.R. § 404.1520(a). The ALJ did that here, finding that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 22–23. The ALJ concluded that, "[b]ecause

9

[Plaintiff's] medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas . . . they were non-severe." *Id.* at 23.

But as the ALJ acknowledged, that step-two determination was "not a[n] [RFC] assessment" that step four requires. *Id.*; *see also Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, at *5 n.4 (W.D.N.Y. Sept. 28, 2021) ("[T]he Social Security Regulations stress that the 'special technique' described in 20 C.F.R. [§] 404.1520(a) is not an RFC assessment, and further, the mental RFC assessment . . . 'requires a more detai[l]ed assessment.'" (quoting SSR 96-8p, 1996 WL 374184, at *4)). At step four, an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). Put differently, the step-two analysis labels impairments as severe or non-severe, and the step-four analysis determines what a claimant can and cannot do in light of those impairments.

Because those analyses differ, *see David Q. v. Comm'r of Soc. Sec.*, 2022 WL 806628, at *5 (W.D.N.Y. Mar. 17, 2022) ("[I]t is well-established that the step-two analysis is analytically distinct from the RFC analysis." (citation modified)), an ALJ must address all limitations—severe and non-severe—when determining a claimant's RFC, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable

10

impairments that are not 'severe' . . . when we assess your [RFC].").  The ALJ did that here.

At step four, the ALJ noted that Plaintiff alleged disability based on, among other things, "depressive disorder, anxiety disorder, and [PTSD]." Tr. 21.  The ALJ found, however, that those limitations "considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." *Id.*  In making that finding, the ALJ explained that Plaintiff's "primary care provider documented diagnoses of anxiety and depression, but he also noted that her symptoms were improved and she was doing well without medication," and that Plaintiff "did not subsequently endorse mental health symptoms to treating providers, and she generally presented within normal limits on mental status exams." *Id.* at 21–22.

The ALJ also considered the opinions of Eric Weiner, Ph.D., and J. May, Ph.D., both of which addressed Plaintiff's non-severe mental impairments. *See id.* at 32.  Dr. Weiner reviewed the record and found that Plaintiff was mildly limited in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.* at 79.  Dr. Weiner concluded that Plaintiff had some difficulty with memory and concentration, but that Plaintiff's psychiatric issues were "secondary" and "non-severe." *Id.*  Dr. May later reviewed the record and affirmed Dr. Weiner's findings. *See id.* at 104–06.

Certainly, by addressing Plaintiff's depressive disorder, anxiety disorder, and PTSD and considering Dr. Weiner's and Dr. May's opinions, the ALJ satisfied her duty to consider Plaintiff's non-severe impairments at step four. *See Larson v. Comm'r of Soc. Sec.*, 2020 WL 5018331, at *6 (W.D.N.Y. Aug. 25, 2020) (explaining that an ALJ implicitly considers symptoms associated with a plaintiff's diagnosed impairments by considering the related medical evidence and associated medical opinions); *see also Ana H. v. Comm'r of soc. Sec.*, 2020 WL 6875252, at *10 (W.D.N.Y. Nov. 23, 2020) (noting that an ALJ "implicitly considered the limiting effects" of a plaintiff's subjective complaints by relying on medical opinions that considered those complaints).

Plaintiff nonetheless suggests that, because the ALJ found Plaintiff to have mild limitations in various areas of mental functioning, the ALJ was required to include at least some mental restrictions in the RFC. *See* Dkt. 9-1 at 8–9. But the regulations require only that an ALJ *consider* a claimant's non-severe mental impairments. *See Parker-Grose*, 462 F. App'x at 18. And where substantial evidence supports only mild limitations in mental functioning, an ALJ is not required to include mental restrictions in the RFC. *See Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) ("Even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC."); *Katherine R. v. Comm'r of Soc. Sec.*, 2021 WL 5596416, at *6–7 (W.D.N.Y. Nov. 30, 2021) ("Where, as here, an ALJ's findings of only mild limitations in mental functioning are supported by substantial

12

evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC.").

Plaintiff also suggests that, because Dr. Heyden found that Plaintiff should be limited to low stress jobs, the ALJ was required to include stress-related restrictions in the RFC. *See* Dkt. 9-1 at 9–11. But, as noted above, the ALJ considered Dr. Heyden's opinion in light of the regulatory factors and found it to be "unpersuasive." Tr. 30. In doing so, the ALJ explicitly addressed Dr. Heyden's stress-related limitations, noting that they were "vague and not supported by the relevant evidence of record." *Id.* The ALJ, therefore, was not required to include any associated restrictions in the RFC. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free to . . . choose between properly submitted medical opinions." (citation modified)).

In sum, the ALJ considered appropriately Plaintiff's non-severe mental impairments when formulating the RFC. Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did that, the ALJ's decision as supported by substantial evidence, and the Court will not second-guess it, *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

13

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 15) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 9).  The Clerk of the Court shall close this case.


SO ORDERED.


Dated:      August 10, 2026
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

14